1
2
3
4
5
6
7
8                     UNITED STATES DISTRICT COURT
9                     CENTRAL DISTRICT OF CALIFORNIA
10
11    STANLEY M. WATSON,                 Case No. SACV 17-1367 JC
12                     Plaintiff,
                                         MEMORANDUM OPINION AND
13          v.                           ORDER OF REMAND
14
      COMMISSIONER OF SOCIAL
15    SECURITY ADMINISTRATION,
16                     Defendant.
17
18    I.    SUMMARY

19          On August 8, 2017, plaintiff Stanley M. Watson filed a Complaint seeking

20    review of the Commissioner of Social Security's denial of plaintiff's application

21    for benefits.  The parties have consented to proceed before the undersigned United

22    States Magistrate Judge.

23          This matter is before the Court on the parties' cross motions for summary

24    judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion")

25    (collectively "Motions").  The Court has taken the Motions under submission

26    without oral argument.  See Fed. R. Civ. P. 78; L.R. 7-15; August 14, 2017 Case

27    Management Order ¶ 5.

28
                                         1

Based on the record as a whole and the applicable law, the decision of the Commissioner is REVERSED AND REMANDED for further proceedings consistent with this Memorandum Opinion and Order of Remand.

## II. BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

On August 16, 2013, plaintiff filed an application for Disability Insurance Benefits alleging disability beginning on January 15, 2009, due to neuropathy in his feet and legs, muscle spasms, and headaches. (Administrative Record ("AR") 22, 220, 234). The ALJ examined the medical record, and on March 16, 2016, heard testimony from plaintiff (who was represented by counsel) as well as vocational and medical experts. (AR 35-56).

On March 29, 2016, the ALJ determined that plaintiff was not disabled through December 1, 2014 (*i.e.*, the "date last insured"). (AR 22-29). Specifically, the ALJ found: (1) plaintiff suffered from the following severe impairments: diabetes mellitus with bilateral peripheral neuropathy, degenerative disc disease of the lumbar spine, and status post right second and third finger injury status post repair surgery (AR 24); (2) plaintiff's impairments, considered individually or in combination, did not meet or medically equal a listed impairment (AR 24); (3) plaintiff retained the residual functional capacity to perform light work (20 C.F.R. § 404.1567(b)) with additional limitations[1] (AR 25); (4) plaintiff could perform his past relevant work as a tax preparer and

---

[1]The ALJ determined that plaintiff (i) could lift and/or carry 20 pounds occasionally and 10 pounds frequently; (ii) could stand and/or walk for two hours out of an eight-hour work day with regular breaks; (iii) could sit for six hours out of an eight-hour work day with regular breaks; (iv) could frequently push and pull with both upper and lower extremities; (v) could occasionally climb stairs, bend, balance, stoop, kneel, crouch, and crawl; (vi) could not climb ladders, ropes, or scaffolds; (vii) could frequently reach and perform fine and gross manipulation with both upper extremities; (viii) was precluded from working at unprotected heights and around dangerous or fast-moving machinery; and (ix) was precluded from exposure to temperature extremes or heat and cold. (AR 25).

2

controller (AR 28); and (5) plaintiff's statements regarding the intensity, persistence, and limiting effects of subjective symptoms were not entirely credible (AR 25, 28).

On June 23, 2017, the Appeals Council denied plaintiff's application for review. (AR 1).

## III.  APPLICABLE LEGAL STANDARDS

### A.  Administrative Evaluation of Disability Claims

To qualify for disability benefits, a claimant must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Molina v. Astrue, 674 F.3d 1104, 1110 (9th Cir. 2012) (quoting 42 U.S.C. § 423(d)(1)(A)) (internal quotation marks omitted).  To be considered disabled, a claimant must have an impairment of such severity that he is incapable of performing work the claimant previously performed ("past relevant work") as well as any other "work which exists in the national economy." Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)).

To assess whether a claimant is disabled, an ALJ is required to use the five-step sequential evaluation process set forth in Social Security regulations. See Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th Cir. 2006) (citations omitted) (describing five-step sequential evaluation process) (citing 20 C.F.R. §§ 404.1520, 416.920).  The claimant has the burden of proof at steps one through four – i.e., determination of whether the claimant was engaging in substantial gainful activity (step 1), has a sufficiently severe impairment (step 2), has an impairment or combination of impairments that meets or equals a listing in 20 C.F.R. Part 404, Subpart P, Appendix 1 (step 3), and retains the residual functional capacity to perform past relevant work (step 4). Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citation omitted).  The Commissioner has the

3

1    burden of proof at step five – *i.e.*, establishing that the claimant could perform

2    other work in the national economy.  Id.

3             **B.    Federal Court Review of Social Security Disability Decisions**

4             A federal court may set aside a denial of benefits only when the

5    Commissioner's "final decision" was "based on legal error or not supported by

6    substantial evidence in the record."  42 U.S.C. § 405(g); Trevizo v. Berryhill, 871

7    F.3d 664, 674 (9th Cir. 2017) (citation and quotation marks omitted).  The

8    standard of review in disability cases is "highly deferential."  Rounds v.

9    Commissioner of Social Security Administration, 807 F.3d 996, 1002 (9th Cir.

10   2015) (citation and quotation marks omitted).  Thus, an ALJ's decision must be

11   upheld if the evidence could reasonably support either affirming or reversing the

12   decision.  Trevizo, 871 F.3d at 674-75 (citations omitted).  Even when an ALJ's

13   decision contains error, it must be affirmed if the error was harmless.  Treichler v.

14   Commissioner of Social Security Administration, 775 F.3d 1090, 1099 (9th Cir.

15   2014) (ALJ error harmless if (1) inconsequential to the ultimate nondisability

16   determination; or (2) ALJ's path may reasonably be discerned despite the error)

17   (citation and quotation marks omitted).

18           Substantial evidence is "such relevant evidence as a reasonable mind might

19   accept as adequate to support a conclusion."  Trevizo, 871 F.3d at 674 (citation

20   and quotation marks omitted).  It is "more than a mere scintilla, but less than a

21   preponderance."  Id.  When determining whether substantial evidence supports an

22   ALJ's finding, a court "must consider the entire record as a whole, weighing both

23   the evidence that supports and the evidence that detracts from the Commissioner's

24   conclusion[.]"  Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014) (citation

25   and quotation marks omitted).

26           Federal courts review only the reasoning the ALJ provided, and may not

27   affirm the ALJ's decision "on a ground upon which [the ALJ] did not rely."

28   Trevizo, 871 F.3d at 675 (citations omitted).  Hence, while an ALJ's decision need

4

not be drafted with "ideal clarity," it must, at a minimum, set forth the ALJ's reasoning "in a way that allows for meaningful review." Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015) (citing Treichler, 775 F.3d at 1099).

A reviewing court may not conclude that an error was harmless based on independent findings gleaned from the administrative record. Brown-Hunter, 806 F.3d at 492 (citations omitted). When a reviewing court cannot confidently conclude that an error was harmless, a remand for additional investigation or explanation is generally appropriate. See Marsh v. Colvin, 792 F.3d 1170, 1173 (9th Cir. 2015) (citations omitted).

### C. Evaluation of Medical Opinion Evidence

In Social Security cases, the amount of weight given to medical opinions generally varies depending on the type of medical professional who provided the opinions, namely "treating physicians," "examining physicians," and "nonexamining physicians" (*e.g.*, "State agency medical or psychological consultant[s]"). 20 C.F.R. §§ 404.1527(c)(1)-(2) & (e), 404.1502, 404.1513(a); Garrison, 759 F.3d at 1012 (citation and quotation marks omitted). A treating physician's opinion is generally given the most weight, and may be "controlling" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record[.]" 20 C.F.R. § 404.1527(c)(2); Revels v. Berryhill, 874 F.3d 648, 654 (9th Cir. 2017) (citation omitted). In turn, an examining, but non-treating physician's opinion is entitled to less weight than a treating physician's, but more weight than a nonexamining physician's opinion. Garrison, 759 F.3d at 1012 (citation omitted).

An ALJ is required to evaluate "every medical opinion" in a claimant's case record. 20 C.F.R. § 404.1527(b), (c). While not bound by statements about a claimant's condition provided by nonexamining physicians, ALJs must consider such findings as "opinion evidence," and determine the weight to be given such

opinions using essentially the same factors for weighing opinion evidence generally, including "supportability of the opinion in the evidence," "the consistency of the opinion with the record as a whole," "any explanation for the opinion provided by the [nonexamining physician]," as well as "all other factors that could have a bearing on the weight to which an opinion is entitled, [such as] any specialization of the [nonexamining physician]." 20 C.F.R. § 404.1527(b), (c). Since nonexamining physicians, by definition, have no examining or treating relationship with a claimant, the weight given to their opinions will primarily depend on the degree to which the opinions provided are supported by evidence in the case record and the extent to which the physicians explained their opinions. 20 C.F.R. § 404.1527(c)(2)(ii); see also Social Security Ruling ("SSR") 96-6P ("The regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker."). Nonetheless, opinions of a nonexamining physician do not "inevitably" deserve less weight, and may serve as substantial evidence supporting an ALJ's decision "when they are supported by other evidence in the record and are consistent with it." Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citations omitted).

    An ALJ "must explain in the decision the weight given to [nonexamining] opinions" in the same manner as "opinions from treating [and] nontreating sources. . . ." 20 C.F.R. § 404.1527(e)(2)(ii); SSR 96-6p (ALJ not bound by, but may not "ignore" findings of state agency doctors, and ALJ's decision must explain the weight given to such opinions); Sawyer v. Astrue, 303 Fed. Appx. 453, 455 (9th Cir. 2008) (same); see generally 42 U.S.C.A. § 405(b)(1) ("ALJ's unfavorable decision must, among other things, "set[] forth a discussion of the evidence" and state "the reason or reasons upon which it is based").

**IV.   DISCUSSION**

    Plaintiff contends, among other things, that the ALJ failed properly to evaluate the opinions of the testifying medical expert.  (Plaintiff's Motion at 6-8).

The Court agrees.  As the Court cannot find that the ALJ's error was harmless, a remand is warranted.

## A.    Pertinent Background

As the ALJ discussed in detail (AR 27), Dr. Arnold Ostrow, an independent medical expert, testified at the administrative hearing to the following (collectively "Dr. Ostrow's Opinions"):

For the period from June 1, 2011, through April 30, 2013, plaintiff had the residual functional capacity to (i) lift 20 pounds occasionally and 10 pounds frequently; (ii) stand and walk for two hours and sit for six hours; (iii) do frequent handling, fingering, gripping, frequent push/pull, and frequent reaching with the bilateral upper extremities; (iv) do frequent foot pedals bilaterally with the lower extremities; (v) do occasional "posturals" including climbing stairs; (vii) not climb ropes, ladders, or scaffolding; and (viii) not do work at unprotected heights.  (AR 42).  Beginning in May 2013 (*i.e.*, after plaintiff's hand injury and repair surgery), in addition to the limitations above, plaintiff was also limited to (i) "only occasional gripping, handling, and [] fingering on the right"; (ii) "occasional push/pull on the right"; and (iii) "frequent reaching in all directions on the right . . . ."  (AR 42).

## B.    Analysis

The ALJ gave "great weight" to Dr. Ostrow's Opinions, but expressly rejected Dr. Ostrow's opinion that plaintiff was limited to "only occasional gripping, handling, and fingering" ("rejected limitation"), stating simply that "[the rejected limitation] is not consistent with the [plaintiff's] self-described activities of driving, preparing meals, doing laundry, paying bills, and shopping subsequent to the right hand injury."  (AR 27).  The ALJ materially erred in evaluating the medical expert's testimony.

First, the ALJ's conclusory assertion that the rejected limitation was inconsistent with plaintiff's "self-described activities," followed by a seriatim list

of generic activities apparently drawn from plaintiff's function report, is not sufficiently specific to permit the Court to determine whether the ALJ discredited the rejected limitation on permissible grounds. In short, the ALJ did not explain *how* any of the cited activities materially conflicted with the rejected limitation and why. Garrison, 759 F.3d at 1012-13 (ALJ errs when rejects medical opinion merely by "criticizing it with boilerplate language that fails to offer a substantive basis for [the] conclusion") (citing Nguyen v. Chater, 100 F.3d 1462, 1464 (9th Cir. 1996)). While the record may, as defendant suggests (Defendant's Motion at 10-11), contain additional or more specific conflicts between plaintiff's activities and the rejected limitation, since the ALJ did not find as much, this Court may not affirm the ALJ's non-disability determination on such additional grounds. See Trevizo, 871 F.3d at 675 (citations omitted).

Second, in any event, the ALJ's conclusion as to the rejected limitation is not supported by substantial evidence. For example, the ALJ wrote that the rejected limitation was inconsistent with plaintiff's "self-described activities of . . . preparing meals, doing laundry . . . and shopping subsequent to the right hand injury." (AR 27) (citing Exhibit 6E at 3-4 [AR 262-63]; "Hearing"). An ALJ may reject a medical opinion to the extent it is inconsistent with a plaintiff's own statements regarding his activities. See Morgan v. Commissioner of Social Security Administration, 169 F.3d 595, 601-02 (9th Cir. 1999). The evidence the ALJ cited in the decision, however, actually reflects that plaintiff's ability to engage in such activities was much more limited than the ALJ's decision suggests. For example, in his function report, plaintiff stated that the meals he would prepare were relatively simple (*i.e.*, "sandwiches, frozen dinners, canned food, cereal, eggs"), that he would make his own meals only "[a]bout four days a week[,]" and that it took plaintiff only "about [seven] minutes" to prepare each meal. (AR 262). Moreover, at the hearing plaintiff testified that his son "helps [] with cooking." (AR 49). Similarly, plaintiff stated in his function report that he

"can [do] laundry" but went on to explain that he did so only "once per week" and the task would only take plaintiff a total of 20 minutes "to load and unload the machine and fold the clothes." (AR 262). In addition, plaintiff also stated that he went shopping only "once or twice per week for [one] hour." (AR 263).

The ALJ also found the rejected limitation inconsistent with plaintiff's abilities to drive and pay bills. (AR 27). At the hearing, however, plaintiff testified that although he did drive a car, he was "not able to sit for long periods in [the] car[,]" and he could only drive for about 15 to 20 minutes before needing to "stop and stretch [his] legs[.]" (AR 49-50). Also, the cursory indication in plaintiff's function report that plaintiff was generally able to "[p]ay bills" did not include any detail regarding the amount of exertion such activity actually required of plaintiff, much less detail which suggests that plaintiff's method of bill paying involved more than "occasional" gripping, handling, or fingering. The ALJ's imprecise characterization of plaintiff's statements calls into question the validity of both the ALJ's evaluation of Dr. Ostrow's Opinions overall and the ALJ's decision as a whole. See Regennitter v. Commissioner of Social Security Administration, 166 F.3d 1294, 1297 (9th Cir. 1999) (A "specific finding" that consists of an "inaccurate characterization of the evidence" cannot support ALJ's decision); Reddick v. Chater, 157 F.3d 715, 722-23 (9th Cir. 1998) (error for ALJ to paraphrase evidence in manner "not entirely accurate regarding the content or tone of the record"); see generally Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984) (ALJ may not selectively rely on only portions of record which support non-disability) (citations omitted).

Third, it appears that the ALJ also failed properly to account for Dr. Ostrow's opinion that plaintiff was limited to "occasional push/pull on the right." (Compare AR 25 with AR 42). The ALJ neither expressly rejected the additional functional limitation in Dr. Ostrow's Opinions, nor included such limitation in the residual functional capacity assessment for plaintiff in the ALJ's decision. (AR

38, 84-86).  The ALJ's failure to account for such significant and probative medical opinion evidence was legal error.  See <u>Vincent v. Heckler</u>, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (An ALJ must provide an explanation when she rejects "significant probative evidence.") (citation omitted).

Finally, the Court cannot confidently conclude that the ALJ's errors were harmless.  For example, at the administrative hearing, the vocational expert testified that plaintiff (or a hypothetical person with plaintiff's characteristics) "[could not] do past work or any other work" if such person was "limited to occasional push/pull" and "occasional gross and fine manipulation" with the "right upper extremity[.]"  (AR 54).  Therefore, considering the foregoing specifically, and the overall record as a whole, the Court cannot say that the ALJ would necessarily have reached the same result absent the errors discussed above.

Accordingly, this case must be remanded to permit the ALJ to reevaluate the medical opinion evidence.

///
///
///
///
///
///
///
///
///
///
///
///
///
///

**V.   CONCLUSION**[2]

For the foregoing reasons, the decision of the Commissioner of Social Security is REVERSED in part, and this matter is REMANDED for further administrative action consistent with this Opinion.[3]

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED:   April 27, 2018

_____ /s/ _____
Honorable Jacqueline Chooljian
UNITED STATES MAGISTRATE JUDGE

_____

[2]The Court need not, and has not adjudicated plaintiff's other challenges to the ALJ's decision, except insofar as to determine that a reversal and remand for immediate payment of benefits would not be appropriate.  On remand, however, the Commissioner may wish to reevaluate plaintiff's subjective statements which, for similar reasons discussed herein, appear to have been rejected for less than "specific, clear, and convincing reasons."  See generally, Brown-Hunter, 806 F.3d at 488-89 (ALJ may give less weight claimant's subjective statements "only by providing specific, clear, and convincing reasons for doing so").

[3]When a court reverses an administrative determination, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation."  Immigration & Naturalization Service v. Ventura, 537 U.S. 12, 16 (2002) (citations and quotations omitted).  Remand is proper where, as here, "additional proceedings can remedy defects in the original administrative proceeding. . . ."  Garrison, 759 F.3d at 1019 (citation and internal quotation marks omitted).